CRESWELL v. KEITH.

5-2782                                      361 S. W. 2d 542

Opinion delivered November 5, 1962.

*Mitchell & Mitchell* and *Roger L. Murrel,* for appellant.

*Spencer & Spencer,* for appellee.

Ed. F. McFaddin, Associate Justice. This is the second appearance of this case in this Court. Our first opinion was on April 3, 1961 (see *Creswell* v. *Keith,* No. 2339, 233 Ark. 407, 344 S. W. 2d 854).

On August 28, 1958, Creswell filed suit against Keith *et al.,* claiming, *inter alia,* that Creswell was entitled to judgment for $61,500.00 because Keith had defrauded him of that amount, and that a receiver should be appointed for the Creswell-Keith Mining Trust, and for other relief. By answer, the defendants alleged that on May 28, 1957, Keith had executed a complete release of all matters involved in the litigation. When the release was exhibited, the Chancery Court refused to hear any testimony and dismissed Creswell's suit. On appeal to this Court, we held that evidence should be heard to determine whether the release was valid. That was our holding in the opinion of April 3, 1961 previously mentioned. On remand, the Chancery Court heard all the evidence offered and after weighing the same, dismissed the plaintiff's complaint for want of equity, finding:

"That the original release executed by the plaintiff, Arch N. Creswell, was a valid release executed for valid considerations and that the plaintiff has failed to establish any defense to said release or any grounds on which said release[1] could be set aside."

---

[1] The release which Creswell admitted signing is as follows:

"RELEASE

"KNOW ALL MEN BY THESE PRESENTS:

"I, Arch N. Creswell, of the City of Hot Springs, County of Garland, State of Arkansas, for and in consideration of the sum of $910.00 Dollars in U. S. Currency to me in hand paid by R. Neville Keith, of the City of Hot Springs, County of Garland, State of Arkansas, paid for and in behalf of himself personally and as Trustee and on behalf of Creswell-Keith, Inc. and the Creswell-Keith Mining Trust both of Hot Springs, Arkansas, do release remise and discharge R. Neville Keith personally, R. Neville Keith as Trustee, Creswell-Keith, Inc. and the

From that decree, Creswell brings the present appeal. To overcome the admitted release, Creswell stated that he received no consideration at the time he signed it. But he finally admitted that he received $910.00 and a certificate for 100,000 shares in the Creswell-Keith Mining Trust, and also a mine in Mexico and certain property at the mine which Creswell had operated for one of the companies in which he and Keith were interested. The chattel property at the Mexico mine had a book value of several thousand dollars. Creswell was the man who knew most about it. He had returned from Mexico and had been in Hot Springs three months before he executed the release in 1957. Certainly there was consideration to support the release; and there is no evidence of duress. As to misrepresentation and fraud causing Creswell to execute the release, the evidence established that Keith had written Creswell about various business matters from time to time while Creswell was in Mexico managing the mine, and of which management Keith was very bitterly complaining. In short, there is no evidence of fraud or misrepresentation.

Finally, Creswell claims that he and Keith commenced their dealings as partners, that on account of such relationship Creswell trusted Keith, and that Keith, in obtaining the release from Creswell, did not observe the standards that law and equity require in dealings between partners. In *Alexander* v. *Sims*, 220 Ark. 643, 249 S. W. 2d 832, and in *Boswell* v. *Gillett*, 226 Ark. 935, 295 S. W. 2d 758, we had occasion to consider and emphasize the trust relationship that exists between partners; and we adhere to all the rules therein stated. Certainly Keith owed to Creswell a full and complete disclosure of assets and liabilities before purchasing his

---

Creswell-Keith Mining Trust of and from all, and all manner of actions, judgments, executions, debts, dues, claims, and demands of every kind and nature whatsoever which against R. Neville Keith personally, R. Neville Keith as Trustee, Creswell-Keith, Inc. and the Creswell-Keith Mining Trust ever had or now have, or which I or my heirs, executors or administrators have nor or may hereafter have by any reason whatsoever.

"In witness whereof, I have hereunto set my hand this 28th day of May, 1957. (Signed) Arch N. Creswell."

interest. In 40 Am. Jur. 218, "Partnership" § 129, the holdings are summarized:

"The general rule that the utmost good faith is required of partners in their relationship with each other, and that, since each is the confidential agent of the other, each has a right to know all that the others know and each is required to make full disclosure of all material facts within his knowledge in any way relating to partnership affairs, is held almost universally to apply in the case of a sale by one partner to another of his interest in the partnership."

With these guiding principles in mind, we find nothing in the record to show that Keith failed to make a full disclosure of all material facts relating to the enterprises in which he and Creswell were interested. Creswell complains that after Keith acquired his interest, oil wells were commercialized on holdings in Arkansas. But the record shows that on November 26, 1956, Keith wrote Creswell a letter[2] while the latter was in Mexico, and told him of the oil possibilities. When Creswell returned from Mexico, he had the right of access to all the books and files of the various enterprises in which he and Keith were interested. So far as the record before

---

[2] here are portions of the said letter:

"I am working on a deal that will really be something and will explain it fully in my next letter.

"I have a few papers for you to sign and will enclose those also. As I explained to you we are selling enough interests in an oil well to pay the costs of drilling in advance of the drilling and have nearly enough to drill our first well on our own. I sold $4,000 or 2/16ths yesterday.

"How are you coming along with the sale of the equipment? I wrote those people from Pocahontas but haven't received a letter in reply. We will wait a little longer and if nothing materializes I feel we should go ahead and sell the equipment. Our oil business here is much too big.

"Do you want me to sell some of your stock for a dollar that you bought for 25 cents? It won't be long before we will be selling it. If you do perhaps you better finish paying for yours so we can issue the Certificate. How is the weather there? It has been a little chilly here lately. I have appointed a Board of Directors for our Corporation and they have been helping me in the sale of stock and other Departments.

"Well I better close and get to work. It seems there is just not enough hours in a day to do every thing that has to be done. Some of the Stockholders have paid up and we now have over $30,000 in cash in the bank in Little Rock."

us shows, the 100,000 shares which Creswell obtained in the Creswell-Keith Mining Trust might have been considered by him as ample for executing the release.

Creswell has not shown that the finding of the Chancery Court is against the preponderance of the evidence.

Affirmed.